**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLARENCE JONATHAN WOOD and HEIDI COLLINGWOOD, | No. 10-17428 |
| Plaintiffs - Appellants, | D.C. No. 1:08-cv-03335-NJV |
| v. | MEMORANDUM[*] |
| SCOTTSDALE INDEMNITY COMPANY, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Nandor J. Vadas, Magistrate Judge, Presiding

Argued and Submitted November 29, 2011
San Francisco, California

Before: THOMAS and CLIFTON, Circuit Judges, and EZRA, District Judge.[**]

Plaintiffs-Appellants Clarence Jonathan Wood and Heidi Collingwood

(collectively, "Plaintiffs") appeal the district court's award of summary judgment

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]  The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation.

in favor of Defendant Scottsdale Indemnity Company ("Scottsdale"). Plaintiffs'

lawsuit stemmed from the death of their 12-year-old daughter Kayla Wood

("Kayla"), who drowned while inner tubing with Kimberly Holz Lindstrom ("Holz

Lindstrom") and three minors on May 25, 2002. At the time that she drowned,

Kayla was in the care of Holz Lindstrom, the girlfriend of Plaintiff Clarence

Jonathan Wood. Holz Lindstrom's father, Ralph Lindstrom, provided the

inflatable truck inner tubes and the rope used to tie them together and drove the

group to the Trinity River.

At the time of the accident, Ralph Lindstrom and his wife, Pamela

Lindstrom (the "Lindstroms") had a Personal Umbrella Liability Policy issued by

Scottsdale ("Scottsdale Policy"), which provided coverage "[w]ith respect to

automobiles or watercraft to which this policy applies," for individuals including

"any person using an automobile or watercraft [owned by or in the care of the

named insured] with the permission of the named insured and for the purpose

intended by the named insured," and "[a]ny person or organization legally

responsible for the use of such automobile or watercraft, but only if no other

insurance of any kind is available to that person or organization for such liability."

Following a lawsuit by Plaintiffs, Holz Lindstrom entered into a settlement

agreement with Plaintiffs whereby, *inter alia*, Holz Lindstrom assigned to

2

Plaintiffs any claims she might have against Scottsdale, which repeatedly denied her coverage. Plaintiffs ultimately obtained an uncontested judgment against Holz Lindstrom.

Plaintiffs subsequently sued Scottsdale for breach of contract and bad faith, contending that Scottsdale had to indemnify Holz Lindstrom. On September 20, 2010, the district court granted summary judgment in Scottsdale's favor. The district court held that the term "watercraft" was "ambiguous as a matter of law" and found that the undisputed evidence demonstrated that the Lindstroms did not have an objectively reasonable expectation that the Scottsdale Policy "shielded them for liability arising from the use of any watercraft, including inflatable truck inner tubes like the one that resulted in the death of Kayla Wood." Plaintiffs appealed.

Plaintiffs' appeal is timely, as the appeal was filed thirty days after the district court entered judgment in a document separate from its order granting summary judgment. *See Corrigan v. Bargala*, 140 F.3d 815, 817–18 (9th Cir. 1998).

This Court reviews a district court's grant of summary judgment *de novo*. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010). We may affirm on any basis supported in the record, "even if it differs from the

3

district court's rationale." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 994 (9th

Cir. 2009) (citation and internal quotation marks omitted). We have jurisdiction

under 28 U.S.C. §§ 1291 and 1294(1), and we affirm.

"Interpretation of an insurance policy is a question of law and follows

the general rules of contract interpretation." *TRB Invs., Inc. v. Fireman's Fund Ins.*

*Co.*, 145 P.3d 472, 476 (Cal. 2006). "The interpretation of a contract must give

effect to the mutual intention of the parties at the time the contract was formed."

*Sony Computer Entm't Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012

(9th Cir. 2008) (citation and internal quotation marks omitted).

> Such intent is to be inferred, if possible, solely from the written provisions
> of the contract. The clear and explicit meaning of these provisions,
> interpreted in their ordinary and popular sense, unless used by the parties in
> a technical sense or a special meaning is given to them by usage, controls
> judicial interpretation.

*TRB*, 145 P.3d at 477 (citations and internal quotation marks omitted). "[A]

provision is ambiguous only if it is susceptible to two or more reasonable

constructions despite the plain meaning of the terms within the context of the

policy as a whole." *Sony*, 532 F.3d at 1013.

The district court did not err in granting summary judgment to

Scottsdale, although we reach this conclusion on different grounds. We find that

the bound inflatable truck inner tubes under the facts of this case do not constitute

4

a "watercraft" as defined in the Scottsdale Policy and thus as a matter of law was not covered under that policy. The Scottsdale Policy defines "watercraft" as "any craft, boat, vessel, or ship designed to transport persons or property on water."

The inner tubes in this case do not fit these descriptions. First, the ordinary meaning of the terms listed in the policy's description of "watercraft" do not encompass bound inflatable truck inner tubes. A "craft" is "a boat esp. of a small size <a seaworthy [craft]>." Webster's Third New International Dictionary 528 (2002). A "boat," meanwhile, is "a small vessel with or without a deck propelled by oars or paddles or by sail or power." *Id.* at 244. "Vessel" is defined as "a [usually] hollow structure used on or in the water for purposes of navigation." *Id.* at 2547. Finally, "ship" is defined as "any large seagoing boat; a boat or structure used for purposes of navigation or intended or used for transportation on a river, sea, ocean, or other navigable water without regard to its form or means of propulsion." *Id.* at 2096. The bound inner tubes cannot be considered a boat – and therefore not a craft – as they are not propelled by oars, paddles, sail, or power; they are also hardly seaworthy. Neither do the inner tubes constitute a vessel or a ship because they are not used for purposes of navigation.

Second, the Scottsdale Policy's definition of watercraft includes the phrase "*designed to transport* persons or property on water" (emphasis added).

5

"Transport" is defined as "[t]o carry, convey, or remove from one place or person to another; to convey across." XVIII The Oxford English Dictionary 423 (2d ed. 1989); *see also* Webster's Third New International Dictionary 2430 (2002) (defining "transport" as "to transfer or convey from one person or place to another: CARRY, MOVE"). The ordinary meaning of the phrase "designed to transport" thus connotes that the watercraft must be designed to actively move persons or properties on water rather than merely float such that the natural flow of a river could carry persons or property. Treating inner tubes the same as boats and ships distorts the ordinary and popular sense of the terms "watercraft" and "transport."

Accordingly, we hold that the rope bound inner tubes do not constitute a "watercraft" and that summary judgment in favor of Scottsdale was proper.

**AFFIRMED.**